BRADLEY, Judge.
Appellant, Jerry Phillips, appeals from a verdict and judgment rendered against him in the amount of $5,950 and from the denial of his motion for a new trial.
Appellee, Charles Frost, sued Phillips and others in the Circuit Court of Morgan County for work and labor done and on an open account. Phillips replied by saying that he did not owe Frost any money, that Frost had contracted to build a garage for a certain price, and that Frost had failed to perform the work in a workmanlike manner. Frost then denied that there was an agreement for the construction of the garage for a certain price. Trial was had on the case as made by the pleadings and a jury verdict was returned in favor of Frost and against Phillips for $5,950. Phillips’ motion for new trial was overruled and he appeals. , .
The facts show that Frost agreed to build a building for Phillips to be used as an automobile body repair shop.
Frost testified that the original agreement was for him to build a thirty foot by *797 sixty foot concrete block building, later changed to a thirty foot by seventy-five foot building, with a steel roof supported by metal trusses. The estimated cost of such a building placed on a concrete slab was $4,200. Frost stated however that he told Phillips the cost of the insulation that was to be placed under the roof and the cost of the doors was unknown; also that the installation of the bathroom would be extra.
Construction of the building was commenced by Frost after Phillips had leveled the lot. During the course of the construction, Frost stated Phillips made several changes in the building. For example Phillips asked that the electrical wiring be changed from one phase to three phase, which entailed additional costs. Also more concrete was poured in an area of the shop where Frost was told by Phillips a body straightening machine was to be installed. Then there was a change in the size of the doors in one end of the building, again requiring additional costs.
According to Frost’s testimony, the total cost of the materials used to construct the shop amounted to $5,296 and his labor cost was about $2,000. He stated that at the time work stopped on the shop, $800 had been paid to him, leaving a balance owing of about $6,400.
Phillips testified that when he first talked to Frost about building a body shop, they talked about a thirty foot by seventy-five foot building with metal siding. During the discussion it was agreed to change from metal siding to concrete block for the walls, and steel trusses were also agreed to for the support of a metal roof. Insulation was to be placed under the roof and two nine foot by twelve foot doors were to be installed. Phillips says they also discussed at this first meeting the preparation of the paint room and the installation of a bathroom. Phillips considered the $4,200 price to include all of these items which had been discussed at the first meeting.
Phillips then stated that when he confronted Frost with the fact the building was not complete and that more time had been taken in the construction than had been agreed upon, Frost said that this was all he would do unless he was paid extra, and because of what was invested in the construction of the shop, there was no way Phillips could get the building for $4,200. Frost said more work would mean more cost to Phillips. Frost did no more work on the shop after this exchange.
The sole issue for review here is whether or not the trial court erred in admitting testimony during the trial that concerned an offer of compromise or settlement prior to trial.
The objected to question and answer occurred on cross-examination of Phillips by Frost’s counsel and is as follows:

“CROSS EXAMINATION

“EXAMINATION BY MR. POWELL:
“Q How much did you offer to pay him?
“A Yesterday I offered him all of what — that plus 3,500 more yesterday.
“MR. SLATE: Judge, I believe that was in the nature of a compromise.
“MR. POWELL: Let the witness answer.
“THE COURT: You went into it, Mr. Slate. I think it is quite open now.
“Q (BY MR. POWELL) Tell the Jury how much you offered him?
“A At which time?
Q Both times?
“A I offered him 3,000 yesterday morning, and I offered him thirty-five yesterday.”
Appellant argues that the trial court erred to reversal by admitting testimony on a settlement offer and particularly questions the court’s statement that appellant had opened the matter for such questions. Appellant, however, did not favor this court with any citations of authority to support his arguments, but since appellee raised no question about this omission no further comment will be made.
We feel quite certain that the trial court, in overruling the objection and stating that appellant had broached the subject first, was referring to that portion of the record beginning on page 322 where appellant was *798 being examined by his own counsel as follows:
“Q What did he say?
“A He said, ‘All of that would cost you more. This is all we are doing.’
“Q Did he say at that time about you owing him anything over the $4,200?
“A He said he didn’t know how much I would owe him after that, but he said there was no way I could get this building for $4,200.
“Q Had ya’ll had any discussion from the night in his kitchen until that night?
“A No, sir.
“Q Did you say when he said that about the 4,200?
“A I told him he agreed to that. He said, ‘This building was going to be a cost plus ten.’ I said, ‘You told me you could build the building for 4,200.’
“Q What did he say?
“A He said, ‘You are not going to get it. I will tear it down before I will let you have it for that.’
“Q What did you say?
“A We got in a heated discussion, and I told him — well, that he wasn’t going to tear it down.
“Q Did he ever come back on the job?
“A No, he did not.
“Q Did you and he have a discussion after that about payment?
“A Yes, sir.
• “Q Where was that?
“A At my father-in-law’s service station.
“Q You and Mr. Frost?
“A Yes, sir.
“Q What did ya’ll say to each other there?
“A Mr. Frost — 1 called him down and was going to try to settle with him just to keep from having to go to court and get it settled up.
“MR. POWELL: Let him answer the question.
“MR. SLATE: I will decide whether I want him to answer the question, Mr. Powell.
“MR. POWELL: Judge, let him answer the question. He said—
“Q (BY MR. SLATE) Did you and him have a discussion about the price of it there at the service station?” (Emphasis added.)
In National Security Fire & Casualty Co. v. Hodgin, 55 Ala.App. 268, 314 So.2d 871 (1975), we said:
“. . .An offer by one party to the other in a civil action to settle or compromise their differences is inadmissible in evidence as a general rule.”
But, we have also taken the position that the trial court will not be placed in error for admitting evidence over objection where substantially the same evidence has been admitted at some other stage of the proceedings. Bentley v. Independent Life and Accident Insurance Co., 47 Ala.App. 15, 249 So.2d 631 (1971); Harvey Ragland Co. v. Newton, 268 Ala. 192, 105 So.2d 110 (1958).
In the case at bar, appellant, on direct examination by his own attorney, answered as follows without objection:
“A Mr. Frost' — I called him down and was going to try to settle with him just to keep from having to go to court and get it settled up.” (R. 323).
This answer by appellant in response to questions propounded by his attorney shows that he intended to try to settle the controversy he had with the appellee over the amount owed on the shop building and thereby avoid a trial. This is the testimony the trial court referred to when it permitted appellant to be cross-examined about the settlement offer and also when it told appellant’s counsel that he had opened up the subject of pre-trial settlement offers. We would also point out that later on in the trial of this case appellant was questioned on redirect examination as follows:
“Q Mr. Powell kept going over this meeting at the service station when you offered forty-eight total. That would have been forty-eight less the eight hundred you have done paid, and you said you offered that to try to keep from going to court and having a hassle?
*799 “A Yes, sir, it would have been cheaper to do it that way than it would to pay for a lawyer and everything and come to court and your time and everything.
“Q You offered that in the way of a compromise and not because you owed it, didn’t you?
“A Yes, sir, that is true.
“Q You never did even promise him in there to pay him over the contract price other than this offer to compromise out there?
“A No, I did not.
“Q You did offer after the dispute and so forth to try to avoid going to court and so forth, you did offer him that?
“A Yes, I did.”
For the reasons given we conclude that the trial court did not err in permitting cross-examination of the appellant on the subject of out-of-court settlement offers where substantially the same evidence had been elicited from him both prior to and subsequent to the occurrence in question.
AFFIRMED.
WRIGHT, P. J., and HOLMES, J., concur.